McBRIDE, Judge.
Robert G. Nixon installed a Mars furnace forced-air heating system in plaintiff’s residence in Harahan some time early in 1952. On October 16, 1954, Nixon sent an employee named Fred DiTrapani, a serviceman, to plaintiff’s residence on a routine service call to check the heating unit for use during the then coming winter season. On January 5, 1955, some three months thereafter, there was an explosion when plaintiff attempted to relight the pilot, the flame of which for some reason had become extinguished, and plaintiff allegedly sustained certain injuries consisting of burns of the head and arms. Dunne brought this suit against Nixon claiming $5,000 for the injuries sustained in the explosion, and in the suit plaintiff set out his charge of negligence against the defendant thus:
“During the course of servicing said heating unit, the said serviceman and agent of defendant, Fred DiTrapani, erroneously and negligently wired the Automatic Reset Thermopilot relay, Type A-1001-1, Serial No. 1-2954, so that said safety pilot was not connected to the main burner control valve which it should control when the pilot light fails, turning off the gas of the main burner.”
The defendant denies the above-quoted allegation made by plaintiff and further alleged that the proximate cause of the explosion was the plaintiff’s failure to follow normal safe procedure and precautions in lighting his heater, pleading in the alterna *500 tive that such disregard of proper heating procedures constituted contributory negligence on the part of plaintiff.
After trial of the case in the lower court on the issues thus made up, plaintiff recovered a judgment for $1,000, from which the defendant took a suspensive appeal to this court.
DiTrapani, in testifying as a witness for the defense, stated that he had been sent by Nixon to call at the Dunne residence to service the heater since he, DiTrapani, was in the neighborhood of the Dunne residence at the time.
DiTrapani checked the unit and noticed that the pilot was dirty, whereupon he removed the pilot and cleaned the orifice thereof, and his testimony is not challenged by either Mr. or Mrs. Dunne although DiTrapani performed the service in their presence. He claims he never touched any wires of the thermopilot relay since it was unnecessary to delve into the internal workings or parts of the heater at all. Besides cleaning the pilot, DiTrapani claims he oiled and greased the bearings on the blower and changed or cleaned the filter; he also made a routine examination of the control system. He lighted the pilot and according to his testimony the safety pilot was properly working at the time. Testimony produced by defendant shows that the amount of the bill rendered plaintiff amounted to only $5.61, and the small amount of the bill indicates only the nominal service charge. We believe this evidence would negate any thought that DiTrapani repaired the heater or changed the wiring in any respect.
The plaintiff has failed completely in his attempt to prove that negligence on DiTrapani’s part caused the explosion. The record reflects that Dunne relighted the pilot flame at least on two other occasions subsequent to DiTrapani’s service call without untoward incident.
On the day of the accident Mrs. Dunne endeavored to reset the thermostat controlling the heater, and not hearing the usual “click,” she assumed the pilot flame must have been extinguished so she called to her husband asking him to “check” the heater.
Dunne went into- the den where the heater is located, removed the panel on the front thereof, and then turned off the pilot valve. He went to the kitchen to secure a match and drank a glass of water, and then went back to the heater and opened the pilot valve. He could not light the flame because the match broke when he endeavored to strike it. He again proceeded to the kitchen and secured a handful of matches. Upon returning to the heater, he says he turned on the pilot valve and the explosion occurred when he put a flaming match to the pilot orifice.
The only evidence which could possibly be construed as being in any way favorable to plaintiff was given by defendant who stated that the morning after the explosion one of his employees examined the heater and found it necessary to rewire the safety pilot. Defendant “guessed” that this work was necessary because the pilot had been wired incorrectly, but even if defendant’s guess can be taken as an admission there was incorrect wiring, there is nothing going to show that defendant was at fault therefor. It may be that the explosion damaged the wires making the rewiring job necessary. We have no way of knowing this.
Moreover, there is no evidence indicating that faulty wiring was the proximate or even a contributing cause of the explosion, but if it could be assumed that the accident is traceable to such defect, it would be reasonable to suppose that if DiTrapani had not properly wired the pilot on October 16, 1954, that an explosion would have occurred on one of those previous occasions when Dunne lighted the heater.
Plaintiff denies that any one other than DiTrapani had access to the wires with which we are concerned, but his testimony reflects the possibility that there may have *501 been others besides DiTrapani who tampered with the heater. Dunne had a summer switch installed for making use of the blower on the heater in connection with an air-conditioning unit, which work, Dunne stated, might have been made between the date DiTrapani examined the heater and the day of the explosion. Besides this, DiTrapani testified when he was at his residence on October 16, Dunne stated he was going to have a control on the heater changed or “whatever his plumber friend was supposed to do.” Dunne did not deny he made such statement to DiTrapani. If there had been defective wiring of the safety pilot, might not the air-conditioning man or the plumber friend be blamed therefor?
In passing we might make the observation that Dunne admits that he did not follow directions in that he failed to turn off the main gas burner before attempting to light the pilot flame. The manufacturer’s directions written on a plate affixed to the heater specifically give the warning that if the pilot is extinguished, the gas burner and pilot valves should not be relighted until after they had been closed for a period of five minutes. The gas burner should not be turned on until after the pilot was lighted. Dunne never did turn off the gas burner.
We have not been favored with an appearance by the appellee’s counsel, nor did he file a brief. We cannot understand this because the judgment up for review runs in favor of the appellee for- $1,000, and why counsel did nothing to maintain it in this court we are at a loss to say.
We can only quote with approval, and as being appropriate to the situation, what our brothers of the Second Circuit said in Burden v. Peoples’ Homestead & Savings Ass’n, La.App., 167 So. 487, 489:
“ * * * Counsel for appellee, Durham, has made no appearance, either by argument or brief, and no explanation is offered for his inaction. This court has a great volume of business to handle and, in order to keep the docket up to date, it requires long hours of labor on the part of the court, and when a case is, so to speak, ‘dumped’ into our laps without any assistance from counsel, we are required to spend unnecessary time and labor in reaching a decision. In a great many cases argument is unnecessary and often of little assistance to the court, and we never complain when a case is submitted on briefs, but we are certainly justified in expecting every counsel in a case to give the court what help he can. The least we can expect is that he file briefs, setting forth his contentions and citing the law upon which the contentions are based. If counsel were appellant, instead of appellee, we would consider the appeal as abandoned and dismiss it; since he represents the appellee, we cannot take this course. Counsel may have a legitimate excuse or reason for his inaction, if so, the court should have been informed of it. * * * ”
We do not know what the contentions or pretensions of counsél would have been had he appeared, but at any rate we have done everything possible to see to it that appellee, although unrepresented, had his proper day in court. We have given especial attention to the evidence adduced by him, and our conclusion is that the record unmistakably sustains defendant’s position. The trial judge was in error in deciding the case as he did.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be reversed and that plaintiff’s suit be dismissed at his cost in both courts.
Reversed.